NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CARMEN QUAGLIA,**<br><br>Plaintiff,<br><br>v.<br><br>**CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY,**<br><br>Defendant. | Civ. No. 2:14-cv-3907 (WJM)<br><br>**OPINION** |

### **WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Carmen Quaglia brings this action pursuant to 42 U.S.C. § 405(g), seeking review of a final determination by the Commissioner denying her application for Social Security Supplemental Income ("SSI") and Disability Insurance Benefits ("DIB"). For the reasons that follow, the Commissioner's decision is **VACATED** and **REMANDED**.

### I.  LEGAL STANDARDS

#### A.  The Five-Step Sequential Analysis

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* §§ 404.1520(b), 416.920(b). If not, the Commissioner moves to step two to determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the Commissioner inquires in step three as to whether the impairment meets or equals

1

the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits (and the analysis ends); if not, the Commissioner moves on to step four. *Id.* §§ 404.1520(d), 416.920(d). In the fourth step, the Commissioner decides whether, despite any severe impairment, the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At step five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience and RFC.  20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

      **B.**    **Standard of Review**

For the purpose of this appeal, the Court conducts a plenary review of the legal issues.  *See Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). The factual findings of the Administrative Law Judge ("ALJ") are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* When substantial evidence exists to support the ALJ's factual findings, this Court must abide by the ALJ's determinations. *See id.* (*citing* 42 U.S.C. § 405(g)).

When the findings of the ALJ and the Appeals Council are in conflict, the Court must look at whether substantial evidence supports the Appeals Council's decision. *See Welch v. Heckler*, 808 F.2d 264, 267 (3d Cir. 1986) ("We conclude that, because the regulations clearly designate the Appeals Council as the final administrative arbiter of all disability claims, *see* 20 C.F.R. § 404.981 (1986), it is the Council's decision that is the 'final decision' of the Secretary, and is thus the decision that must be reviewed by us under the substantial evidence standard.").

**II.**    **BACKGROUND**

Plaintiff Carmen Quaglia is a sixty-two year-old female who applied for DIB on September 9, 2011 and SSI on February 23, 2012.  (Tr. 172-175; 176-181). In both applications, Plaintiff alleged disability since June 10, 2011, due to pain in her knees, hands, shoulders, neck, and feet (Tr. 196).  The agency denied Plaintiff's

2

applications at the initial and reconsideration levels of administrative review (Tr. 79, 87, 95).

On September 12, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 117). The Request for Hearing was acknowledged on September 25, 2012 (Tr. 124-130). The matter was heard by the ALJ on August 1, 2013 (Tr. 25-78). The ALJ issued the decision denying the claim on October 23, 2013 (Tr. 10-24). The request for Appeals Council review was issued on November 21, 2013 (Tr. 9). The Appeals Council issued a Notice re-opening the matter for review on March 29, 2014 (Tr. 167-171). The Appeals Council issued the final decision denying the claim on May 21, 2014 (Tr. 1-8). Plaintiff now appeals to the District Court.

### A.     Summary of the Record

Plaintiff, who was sixty-one (61) years old on the date of the ALJ's decision, has a high school education as well as some on-the-job training for a job she held more than twenty-five (25) years ago (Tr. 29). From 1998 to 2011, Plaintiff worked in a position called "information desk," in the admissions department at Trinitas Hospital (Tr. 31-32). Despite the name of the position, Plaintiff spent very little time at a desk.

Plaintiff described the following as her job duties: 1) pulling the files of patients having same-day surgery, 2) putting bracelets on patients, 3) making photocopies, 4) escorting patients around the hospital, and 5) transporting boxes of documents around the hospital. She spent the vast majority of her day (7 out of 7.5 hours) escorting patients. She also set up a schedule for volunteers and for people who "worked the night shift." She also had input on the evaluation of these workers (Tr. 31-42). Finally, she stated that these volunteers and night shift workers could call her if they had problems with patients or visitors. (Tr. 41)

Plaintiff testified that she last worked at Trinitas on June 9, 2011. Prior to this date, Plaintiff had a series of orthopedic problems that did not leave her permanently unable to work. Treatment for these problems included three arthroscopies of her right knee, carpel tunnel release, and elbow surgery (Tr. 259, 313, 399, 403, 406). Plaintiff left Trinitas on June 9, 2011 because she was about to undergo surgery on her right foot for a bunion and hammertoe (Tr. 46).

Plaintiff was fired from the hospital when she did not return to work 12 weeks after her surgery (Tr. 47). She testified that she was unable to return to work because her physician, Dr. Kline, would not allow her to go back (Tr. 47). Since the surgery

3

on her foot, Plaintiff has had a car accident and a fall that have produced new symptoms of pain throughout her body, and she had an additional knee surgery.

The Vocational Expert ("VE") testified that Plaintiff's past relevant work at Trinitas Hospital was a "composite job" that combined the duties of an information clerk, a semi-skilled, sedentary job; a patient transporter, an unskilled job performed at the medium exertional level; and a general clerk, a semi-skilled job performed at the light exertional level (Tr. 44-45).

### B. The ALJ's Decision

At step one of the sequential evaluation process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity (Tr. 15, Finding 2). At steps two and three of the sequential evaluation process, the ALJ found that Plaintiff had osteoarthritis of the right knee, a torn medial meniscus status-post repair of the left knee, cervical sprain, and disorder of the feet, impairments that were severe but that did not meet or equal the criteria of any of the listed impairments (Tr. 15-16, Findings 3-4). The ALJ found that Plaintiff had the residual functional capacity to perform sedentary work that involved no climbing of ladders or scaffolds, kneeling, or crawling, and only occasional crouching, stooping, and climbing of ramps or stairs (Tr. 17, Finding 5). At step four of the sequential evaluation process, the ALJ bifurcated Plaintiff's past relevant composite job and found that she was capable of performing her past relevant work as an "information clerk" as it is traditionally performed in the general economy, which is at the sedentary level (Tr. 23, Finding 6). Accordingly, the ALJ found that Plaintiff was not disabled (Tr. 24, Finding 7).

### C. The Appeals Council's Decision

The Appeals Council concurred with the ALJ's findings and conclusions with respect to Plaintiff's credibility and residual functional capacity (Tr. 5). However, the Appeals Council did not concur with the ALJ's finding at step four of the sequential evaluation process (Tr. 5). The Appeals Council explained:

> A vocational expert testified at the hearing that the claimant's past relevant job was actually a *composite job* containing significant elements of two jobs that of an information clerk (semi-skilled sedentary work) and a patient escort (unskilled medium work). Social Security Ruling 82-61 provides, in relevant part, that composite jobs have no counterpart in the Dictionary of Occupational Titles (DOT). As a result, composite jobs cannot be bifurcated at step four of the sequential evaluation process when considering work as generally

4

> performed in the national economy. However, an individual may be able to use skills he or she has gained from a composite job to adjust to other work.

(Tr. 5). The Appeals Council went on to conclude that the Plaintiff had acquired the clerical skills to perform the job of information clerk. The Appeals Council moreover explained:

> The [information clerk] job as defined in the Dictionary of Occupational Titles requires basic communication as its integral function. It requires basic communication to answer general inquiries from "persons entering [the] establishment" of the employer. This function is the key and the underlying factor of the job. It requires providing basic information concerning the establishment and it requires the ability to call other employees to answer inquiries that require "more than" basic communication. The job may require keeping a log of questions asked, but it does not require an ability to answer complex questions that may be referred to other employees.

(Tr. 6). The Appeals Council concluded that the Commissioner met her burden at step 5 of demonstrating that there were a significant number of jobs in the national economy to which Plaintiff could transfer her skills. To make this conclusion, the Appeals Council: 1) made a perfunctory conclusion that Plaintiff had acquired the clerical skills at her composite job to be an information clerk, as the job is generally performed in the national economy, and 2) relying on the U.S. Census Bureau 2011 MSA Business Patterns Report for the Metropolitan Areas of New York-Northern New Jersey-Long Island (the "NAICS"), concluded that a significant number of "information clerk" jobs existed. The Appeals Council therefore ultimately affirmed the ALJ's finding that the Plaintiff was not disabled.

### III. DISCUSSION

The relevant disputed issues here are: 1) whether substantial evidence supported the ALJ's credibility determination of Plaintiff and 2.) whether the Appeals Council's determinations at step 5 were legally correct and supported by substantial evidence. Although substantial evidence supported the ALJ's credibility determination, the Appeals Council's analysis at step 5 contains legal error, and the finding of no disability is not supported by substantial evidence.

5

### A. Credibility of Plaintiff's Subjective Complaints

Plaintiff argues that this Court should not uphold the ALJ's finding that Plaintiff's subjective complaints were not fully credible. The Court disagrees.

An individual's statements as to pain or other symptoms are not alone conclusive evidence of disability. 42 U.S.C. §§ 423(d)(5). Rather, "there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged **and** which, when considered with all evidence . . . would lead to a conclusion that the individual is under a disability" 42 U.S.C. § 423(d)(5)(A) (emphasis added). It is the ALJ's responsibility to determine the extent to which a claimant is accurately stating her degree of pain and level of disability. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

With regard to the evaluation of subjective symptoms in all disability cases, the regulations require (1) objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged followed by (2) an evaluation of the intensity and persistence of the pain or symptoms and the extent to which it affects the individual's ability to work. 20 C.F.R. §§ 404.1529(b)-(c). Here, the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause the symptoms that she alleged (Tr. 22). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible because they were inconsistent with the objective medical evidence and Plaintiff's daily activities (Tr. 22-23).

The ALJ noted that, although he generally found Plaintiff to be a credible witness, he found it significant that there was no indication from any of her treating physicians that she was permanently restricted or that she should remain out of work (Tr. 23). The ALJ also noted that Dr. Sullivan's treatment notes suggested that Plaintiff's condition was ripe for a total knee replacement since January of 2011, but that Plaintiff had yet to follow through with the procedure, which presumably would greatly increase her mobility (Tr. 23, 327).

Furthermore, the ALJ noted that the medical evidence demonstrated that Plaintiff was able to utilize her arms and hands in a manner that was entirely consistent with the performance of sedentary work (Tr. 22). Specifically, Dr.

Fernando reported that Plaintiff had full range of motion in all of her joints of the upper extremities, including her fingers and wrists (Tr. 22, 415). Dr. Fernando also indicated that Plaintiff retained intact hand and finger dexterity bilaterally; normal grip and pinch strength bilaterally; and full range of motion at the cervical spine (Tr. 22, 415). Similarly, Dr. Rubinfeld reported that Plaintiff had full range of motion at the shoulders, elbows, and wrists, bilaterally, and indicated that Plaintiff was negative for swelling or pain on palpation of the upper extremities (Tr. 22, 415). Dr. Rubinfeld characterized Plaintiff's grip strength as good, and noted full range of motion at all of her fingers (Tr. 22, 415). The ALJ noted that, other than Plaintiff's testimony, there was nothing in the record which could substantiate a severe impairment of her upper extremities post-alleged onset date (Tr. 22). Furthermore, Plaintiff's Function Report also revealed that she was at least capable of performing the activities required by the limited range of sedentary work contemplated in the residual functional capacity assessment (Tr. 22-23). Plaintiff reported that she was independent in her activities of daily living, despite some difficulty, and that she spent her days doing things consistent with the demands of sedentary work, including reading and using a computer (Tr. 23, 212). Moreover, the ALJ indicated that some of Plaintiff's reported activities suggested even greater functionality, like driving, doing laundry, and shopping (Tr. 23, 211). Plaintiff specifically testified that, while collecting unemployment benefits, she searched for "light jobs" that did not require "too much" walking (Tr. 23, 50-51).

The ALJ also noted that, although not dispositive of the issue of Plaintiff's disability, a negative inference regarding Plaintiff's credibility could be drawn from the fact that Plaintiff applied for and received unemployment compensation during the same period in which she claimed to be disabled (Tr. 23, 48-49). In order to receive unemployment compensation, Plaintiff attested to the state of New Jersey that she was ready, willing, and able to work, while simultaneously alleging to SSA that she was disabled from performing any substantial gainful activity (Tr. 23, 49). The ALJ noted that advising one department of the government that one is able to work, while advising another governmental agency that one is unable to work, is facially inconsistent and reflects poorly on the individual's overall credibility (Tr. 23).

Therefore, substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not fully credible.

### B. Appeals Council's Determinations Regarding Step 5

The Appeals Council's findings at step 5 contain a legal oversight and are not supported by substantial evidence. At step 5, the Appeals Council concluded that: 1.) Plaintiff had skills she could transfer from her composite job at Trinitas to the job of "information clerk" as it is generally performed in the national economy; and 2.) these jobs existed in a significant number in the national economy.

The Appeals Council did not take SSR 82-41 into account. This regulation states that for a worker over age 55 who is limited to sedentary work, "there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry." SSR 82-41. "In order to establish transferability of skills [for a claimant of the Plaintiff's age and experience], the semiskilled or skilled job duties of [her] past work must be so closely related to other jobs which [she] can perform that [she] could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." *Id.* While the Appeals Council concludes that the "information clerk job does not require additional vocational adjustment," the Appeals Council's basis for making this conclusion is not stated. Given this perfunctory conclusion about the vocational adjustment and the total lack of consideration of SSR 82-41, the Appeals Council's step 5 analysis is legally deficient.

Additionally, the reliability of the "evidence" upon which the ALJ and Appeals Council made their step 5 determination about the Plaintiff's skills is highly questionable in certain key areas, rendering the entire body of evidence insubstantial. *See Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014) (stating that the court must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence). The first unreliable piece of evidence is the VE's opinion. The second is Plaintiff's testimony that she "supervised" employees.

The only evidence on the record of the Plaintiff performing activities of an information clerk herself comes from the VE's testimony. At two points, the Vocational Expert stated that the Plaintiff "greeted patients" (Tr. 44, 45). But this conclusion does not reflect Plaintiff's testimony, nor does anything supporting it appear elsewhere in the record. The Plaintiff's testimony demonstrated that she had the following experiences at her job: 1) pulling the files of patients having same-day surgery, 2) putting bracelets on patients, 3) making photocopies, 4) escorting patients around the hospital, and 5) transporting boxes of documents around the hospital. She spent the vast majority of her day (7 out of 7.5 hours) escorting patients. She

8

also set up a schedule for people who volunteered at an information desk and who "worked the night shift," and she was "on call" to answer their questions. She also had input on the evaluation of these workers (Tr. 31-42). Although Trinitas labeled Plaintiff's job "information desk," the record does not demonstrate her performing any patient-greeting activities that one would generally associate with a hospital information desk job.

Moreover, during the early part of the hearing, the VE stated twice that she was "confused" by the lack of connection between the Plaintiff's job title, "information desk" and her actual duties. (Tr. 37, 38). The fact that the VE then went on to say that the Plaintiff "greeted patients" twice, without any basis for so stating, indicates that the VE was still confused by the time she rendered her opinion. Thus, this opinion was not reliable.

It is true that the VE responded affirmatively to the ALJ's question as to whether a person of Plaintiff's age, experience, and RFC could perform the work of an information clerk. However, the record indicates that the VE's basis for this conclusion was at least partially erroneous. The VE concluded that Plaintiff had the skills to be an "information clerk" based upon an assumption that the Plaintiff "greeted patients," an assumption the record does not support. Moreover, the ALJ posed the VE no question involving the limitations of SSR 82-41.

Although Plaintiff answered affirmatively when asked whether she "supervised" certain volunteers who performed the duties of an information clerk, when the ALJ pressed Plaintiff further about this alleged "supervision," her answers indicated that she did not actually "supervise" them:

> **ALJ**: Supervising is often thought of as directing people in their work. Did you direct anyone in their work?
>
> **Plaintiff**: No, not really because they [*sic*] only thing they had to do was – I made a schedule up and if they had a problem they would call me.
>
> …
>
> **ALJ:** Did you supervise anybody during the 7-1/2 hours?
>
> **Plaintiff:** Just the volunteers that were there and the girls that come in after me, after I left.

9

**ALJ:** OK, well, if you're not there, it's hard to be giving direction.

The record is not without other evidence tending to demonstrate that the Plaintiff had the communication skills necessary to perform the job of an information clerk. For example, Plaintiff did state that she believed she could answer phones. She stated that, while at Trinitas, she was "on call" to answer the night staff's questions about scheduling, patients, and visitors. She also contributed to evaluating volunteers and night shift workers. But given the blatant confusion of the VE about Plaintiff's "greeting patients," the most central aspect of an "information clerk's job," and the ALJ's failure to question the VE about the limitations imposed by SSR 82-41, it is not clear how the VE's opinion would have been effected by these important factors.

The ALJ's analysis placed significant weight on the VE's opinion and on Plaintiff's alleged testifying to having supervisory responsibility. Since both these factors were flawed, and since the remaining evidence was not considered in light of the limitations of SSR 82-41, the Court cannot affirm the finding that Plaintiff had skills she could readily transfer from her composite job to the job of information clerk.

Finally, the Appeals Council took administrative notice of the NAICS and concluded that there were information clerk jobs available in significant numbers in the national economy (Tr. 6). While it is permissible for the Appeals Council to take administrative notice of the NAICS, 20 C.F.R. § Pt. 404, Subpt. P, App. 2; 20 C.F.R. § 416.966(d),[1] the conclusions it reached from that document contain judgments that are not substantially supported by the NAICS. The documents to which the Appeals Council referred are located at Tr. 251-257. Interpreting the NAICS, the Appeals Council wrote:

---

[1] 20 C.F.R. § 416.966(d) provides that administrative notice of job data exists "[w]hen we determine that unskilled, sedentary, light, and medium jobs exist in the national economy (in significant numbers either in the region where you live or in several regions of the country), we will take administrative notice of reliable job information available from various governmental and other publications. For example, we will take notice of—
(1) Dictionary of Occupational Titles, published by the Department of Labor;
(2) County Business Patterns, published by the Bureau of the Census;
(3) Census Reports, also published by the Bureau of the Census;
(4) Occupational Analyses prepared for the Social Security Administration by various State employment agencies; and
(5) Occupational Outlook Handbook, published by the Bureau of Labor Statistics."

10

> According to the latest United States Census Bureau 2011 MSA Business patterns (NAICS) report for the Metropolitan areas of New York-Northern New Jersey-Long Island, there are several Office Administrative Services establishments employing approximately 10,000-19,700 clerical employees in establishments that each employ from 100 to 1,000 or more clerical employees. This figure does not account for "all" Office Administrative Services establishments jobs (copy attached). These clerical administrative jobs, whether as information clerk or general office clerk, are significant in numbers regionally in Metropolitan New York-Northern New Jersey-Long Island and in the national economy (20 CFR 404.1566 and 416.966). The information clerk job exists in significant numbers and the claimant has the residual functional capacity to perform such a job.

The data in the NAICS do not clearly support this interpretation. First, the NAICS does not distinguish which of the office administrative jobs are "information clerks" and which are "general office clerks." The difference is significant because a general office clerk is performed at the light level, and the Plaintiff's RFC only permits work at the sedentary level. The Appeals Council's basis for concluding that there are a significant number of information clerk jobs in the national economy is not clear, and therefore, this Court finds that the conclusion is not supported by substantial evidence.

The Court may affirm only on the grounds that the Commissioner stated for her decision. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). The Court cannot affirm the Commissioner's decision due to the following errors at step 5, which demonstrate both legal error and lack of substantial evidence: 1.) the Appeals Council failed to consider the effect of SSR 82-41 on the Plaintiff's case; 2.) the Appeals Council failed to justify its conclusion that the job of information clerk required no "additional vocational adjustment;" 3.) Neither the VE's conclusions about Plaintiff's skills nor the ALJ's conclusion that Plaintiff was a supervisor are reliable; 4.) the Appeals Council's conclusion that there were a significant number of information clerk jobs in the national economy was not supported by the information in the NAICS alone.

## IV. CONCLUSION

For the foregoing reasons, the final decision of the Commissioner is **VACATED** and **REMANDED** for further proceedings in accordance with this Opinion.

/s/ William J. Martini

_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 28, 2015**